UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JOHN DOE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 1:12-CV-111SNLJ |
| D.W. CRANK, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM and ORDER

This matter is before the Court on defendant D.W. Crank's Motion for Summary Judgment (#18). Plaintiff has responded, but defendant has not filed a reply memorandum, and the time for doing so has now passed.

### I. Background

The following facts are uncontested except where indicated.

Plaintiff is a non-uniformed federal law enforcement officer proceeding under the pseudonym John Doe. Defendant Crank is employed as an officer with the Missouri State Highway Patrol. On March 6, 2012, Plaintiff was traveling on northbound I-55 behind a tractor-trailer unit in the right outer lane, and another tractor trailer unit in the left lane as those vehicles approached an interstate exit and merge area. A video recording taken from Defendant Crank's dashboard camera recorded video and audio from the perspective of the dashboard. Plaintiff submitted the video recording as evidence, and defendant Crank has not objected to it nor contested its accuracy.

The video shows that defendant's vehicle approached plaintiff's vehicle from behind. Defendant Crank activated his flashing lights to signal plaintiff to pull over his vehicle. Defendant states that he did so after seeing plaintiff's car slow and attempt to change lanes, but the video does not show any obvious attempt to change lanes (the plaintiff's vehicle never touched the dashed white lane dividers). It is not clear whether plaintiff slowed his speed before defendant put his lights on, but plaintiff's vehicle appears to maintain its distance from the tractor-trailer truck in front of it. Plaintiff further denies that he attempted to change lanes; he says he thought about changing lanes but then he thought the defendant intended to pull out and stop a passing tractor trailer.

Defendant Crank approached plaintiff's vehicle. Video shows plaintiff rolled down his window and the two shook hands through the window. Defendant maintains that when plaintiff rolled down his window, defendant Crank smelled alcohol and told plaintiff his eyes looked bloodshot and jittery. Plaintiff denies that defendant Crank could have smelled alcohol or that plaintiff's eyes looked bloodshot and jittery. Defendant Crank asserts that he attempted to administer the horizontal gaze nystagmus test and advised plaintiff to hold his head steady, but that plaintiff would not hold his head still. Plaintiff denies moving his head and denies defendant could have drawn any conclusion from what he did, which appears on the video to take several seconds. Then the video shows plaintiff exit his vehicle, remove his service weapons from their belt and ankle holsters, and walk to the defendant's car with no difficulty.

Defendant says that he attempted to conduct field sobriety tests and plaintiff failed to

comply. Plaintiff denies a "field sobriety test" was ever administered or attempted.[1] The video recording includes audio of the parties' conversation inside defendant's vehicle. Plaintiff tells defendant he had just left work and was not drinking. Defendant tells plaintiff that he smells like alcohol and tells him to say the alphabet from B to O. Plaintiff refuses to say the alphabet and denies that he had been drinking. Plaintiff asks whether defendant has a breathalyzer test in the vehicle. Defendant says he has one but does not offer to administer it. Defendant handcuffs plaintiff and puts plaintiff under arrest. As defendant drives away with plaintiff, plaintiff suggests that defendant drive him to a hospital so that he can have his blood drawn. Defendant drives plaintiff to a police station where a breathalyzer is administered, and plaintiff's system is found to have no alcohol in it. Plaintiff is thereafter released from custody.

Plaintiff suggests that defendant engaged in the above acts because there was an ongoing dispute between local law enforcement (with whom defendant is associated) and federal law enforcement (with whom plaintiff is associated). In addition, earlier on the day of the incident, plaintiff met with a local prosecuting attorney. (It is unclear to the Court what exactly the meeting was about or what information plaintiff did or did not provide to the prosecuting attorney.)

Plaintiff filed this action against defendant pursuant to 42 U.S.C. § 1983 and claims that the defendant arrested him without probable cause resulting in a deprivation of plaintiff's right to

---

[1]Plaintiff denies any field sobriety tests were ever administered and states that reciting the alphabet is not a field sobriety test but rather a pretest that an officer may use in deciding whether to ask the subject to step from his or her car. Plaintiff admits he refused to recite his alphabet from B to O because he was incredulous that he was being accused of being intoxicated and declined to participate in what he believed was a "charade."

be free from unreasonable seizures. Plaintiff alleges that improper handcuffing by the defendant injured his right wrist and shoulder. He further alleges that he suffered emotional harm and distress and damage to his reputation. Plaintiff seeks nominal or compensatory damages as well as punitive damages, costs, and attorneys' fees.

Defendant has moved for summary judgment.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With

these principles in mind, the Court turns to the discussion.

## III. Discussion

Plaintiff claims that both the traffic stop and arrest were in violation of the Fourth and Fourteenth Amendments.

### A. Traffic Stop

A traffic stop is a seizure under the Fourth Amendment. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). "An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." *Id.* Here, defendant suggests that he stopped plaintiff because plaintiff was following the truck in front of him too closely. Plaintiff suggests that "following too closely" is not a crime, but the relevant case law suggests that an officer may lawfully stop a vehicle that appears to be following another too closely. Curiously, the very case that plaintiff cites involves a car that was stopped for following too closely, and the court appears to accept that "following too closely" is a legitimate reason to stop a vehicle; indeed, the issue there was whether the officer's testimony that the driver was actually following too closely was credible. *See State v. Hamilton*, 227 S.W.3d 514, 516 (Mo. Ct. App. 2007); *see also United States v. Sanchez*, 417 F.3d 971, 973 (8th Cir. 2005) (discussing a search following a traffic stop that was made because the driver was following too closely).

Here, there is a question of fact as to whether the plaintiff was "following too closely" under the circumstances, which appear to be that plaintiff braked at a heavily-used interstate exit exchange behind a truck that was slowing down. Because this matter is in dispute, the Court will move on to whether there was probable cause for the arrest.

## B. Arrest

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). "Probable cause means that the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been committed." *Adams v. Williams*, 407 U.S. 143, 160 (1972) (internal quotation omitted). This Court's inquiry then is whether defendant had probable cause to arrest plaintiff on March 6, 2012. *See also Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) ("a false arrest claim under §1983 fails as a matter of law where the officer had probable cause to make the arrest.").

"The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of circumstances." *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983); *see also Hannah*, 795 F.2d at 1389; *see also Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). Here, defendant states that he had probable cause to arrest the plaintiff because he smelled alcohol, plaintiff's eyes were "bloodshot" and "jittery," and plaintiff would not cooperate with the horizontal gaze test or the subsequent "say the alphabet from B to O" test.

Plaintiff disputes that defendant smelled alcohol or that he was not cooperative with the horizontal gaze test. He states that defendant told him that he was moving his head, but plaintiff denies moving his head. Plaintiff explains he refused to say the alphabet because he was incredulous that he was being accused of driving under the influence. In addition, plaintiff says there were dozens of factors supporting plaintiff's sobriety, including that his driving (which

involved pulling over in heavy traffic just after an interstate exit exchange) was flawless, that he walked and talked and removed his two holstered weapons with no trouble, and that he exhibited none of the twenty signs of intoxication that are listed in the training manual for detecting impaired drivers at night. As for the bloodshot eyes, to the extent plaintiff's eyes were bloodshot, plaintiff explains he had just completed a 14-hour shift.

"In order to prevail on summary judgment in a false arrest case, the evidence, including admitted facts and disputed facts viewed in the light most favorable to the plaintiff, in the knowledge of the police officer ordering the arrest, must conclusively establish probable cause. Conflicting evidence on any issue would make that issue a jury question." *Nix v. Sweeney*, 573 F.2d 998, 1001 (8th Cir. 1978) (internal citation to *Giordano v. Lee*, 434 F.2d 1227 (8th Cir. 1970) omitted); *see also Lingo v. Burle*, 4:06-CV-1392 CAS, 2008 WL 2787703, *6 (E.D. Mo. July 15, 2008) (citing *Nix*, 573 F.2d at 1001 and holding that disputed facts existed with respect to probable cause for an arrest). Here, there is conflicting evidence with respect to most of the factors that defendant says support probable cause for the arrest. The only undisputed points were that (1) plaintiff's eyes may have been bloodshot (which plaintiff explained may have been due to his long shift), and (2) plaintiff admits that he refused to recite his alphabet from B to O. Although "refusal to take field sobriety tests is evidence of intoxication," *Edmisten v. Dir. of Revenue*, 92 S.W.3d 270, 274 (Mo. Ct. App. 2002), the Court must take into account "the cumulative effect of the facts in the totality of circumstances." *Everroad*, 704 F.2d at 406. Here, particularly given the plaintiff's offer to take a breath test, the refusal to say the alphabet is not by itself probable cause. In *Edmisten*, for example, although the court held the refusal to take a breath test was evidence of intoxication, there were ample other facts that also supported

probable cause, including the driver's being slumped on his steering wheel, erratic driving, the odor of alcohol, slurred speech, watery and bloodshot eyes, and the driver's acknowledging that he had been drinking. 92 S.W.3d at 274. The Court cannot agree that probable cause existed as a matter of law for plaintiff's arrest.

### C. Qualified Immunity

Defendant contends that he is entitled to qualified immunity because he says plaintiff's claim that his Fourth Amendment rights were violated was not clearly established at the time of plaintiff's arrest. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court's "inquiry into the qualified immunity question thus must consider both the nature of the plaintiff['s] claims and the state of the law with respect to such claims." *Sellers By & Through Sellers v. Baer*, 28 F.3d 895, 899 (8th Cir. 1994). Defendant suggests that he is entitled to qualified immunity protection because he says there was no relevant law putting him on notice that an arrest based on his observations and plaintiff's refusal to cooperate in field sobriety tests violated a clearly established right. But the law remains that a warrantless arrest requires that probable cause exist, and here the disputed facts go to whether defendant had probable cause at all. Qualified immunity is therefore not available to defendant.

**IV. Conclusion**

Summary judgment will be denied, and plaintiff's claim remains for trial in this matter.

**IT IS HEREBY ORDERED THAT** defendant's motion for summary judgment (#18) is DENIED.

Dated this __17th__ day of December, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE