UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RYAN BECKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:12-CV-111SNLJ |
| ) | |
| D.W. CRANK, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM and ORDER

This matter is before the Court on several motions following a jury verdict for plaintiff Ryan Becker and against defendant D.W. Crank.

## I. Background

Plaintiff is an agent with the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF"). On March 6, 2012, plaintiff was traveling on northbound Interstate 55 when he was pulled over by Missouri State Highway Patrol officer D.W. Crank. Defendant Crank arrested plaintiff for driving while intoxicated and drove plaintiff to a patrol station. At the station, defendant administered a breathalyzer test, and plaintiff registered a 0.0 result. Plaintiff was then released from custody and filed this case against defendant Crank for wrongful arrest. After a two-day trial, the jury found in favor of plaintiff and awarded him $250,000 in damages.

1

Defendants moved for judgment as a matter of law (#85) and for a new trial (#87). Those motions have been fully briefed. Plaintiff has moved for costs (#82) and attorneys' fees (#83), but no responses have been filed, and the time for doing so has passed.

I. **Motion for Judgment as a Matter of Law (#85)**

Defendant seeks a judgment as a matter of law because he states that he had at least arguable probable cause to arrest plaintiff and thus has qualified immunity. *See Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011); *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest "are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (citation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Borgman*, 646 F.3d at 523 (citing *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

Defendant insists he had "arguable probable cause" to arrest plaintiff for driving while intoxicated because he said he observed plaintiff driving unsafely, he detected what he believed to be the smell of alcohol, he noticed that plaintiff's eyes appeared bloodshot and, while attempting a preliminary horizontal gaze nystagmus test, that plaintiff's eyes appeared jerky or jumpy. Further, plaintiff refused to perform his B-to-O alphabet test.

"The probable cause standard inherently allows room for reasonable mistakes by a

reasonable person, but the qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Defendant also argues that the suggestion that he harbored a grudge against plaintiff should be disregarded because whether arguable probable cause exists relies on an objectively reasonable officer standard, not the credibility of accusations about the arresting officer's motive. *Id.* at 1057-60.

The Court cannot say as a matter of law that defendant's "mistake" of arresting a sober person for driving while intoxicated was objectively reasonable under the circumstances. The defendant did not explain how he could have smelled the strong odor of alcohol on plaintiff, and plaintiff and/or the video of the encounter itself refuted defendant's purported reasons for arresting plaintiff. The video showed plaintiff ably navigating pulling over while crossing a busy interstate exchange, removing his weapons and walking to defendant's vehicle, and speaking clearly while, among other things, requesting a breathalyzer. Plaintiff testified that his eyes were not bloodshot and that he refused defendant's B-to-O "test" because it was subjective.[1] Defendant claims that

---

[1] Plaintiff denies any field sobriety tests were ever administered and states that reciting the alphabet is not a field sobriety test but rather a pretest that an officer may use in deciding whether to ask the subject to step from his or her car. Plaintiff admits he refused to recite his alphabet from B to O because he was incredulous that he was being accused of being intoxicated and declined to participate in what he believed was a "charade."

3

plaintiff did not ask to take a breath test, but rather plaintiff asked only if defendant possessed one; defendant's suggestion that plaintiff was not asking to take the breath test is not a reasonable interpretation. Defense counsel delved deeply into the events of plaintiff's workday on the day of the arrest, but no explanation for the alleged smell of alcohol was provided.[2] Had defendant been able to explain the alleged odor of alcohol (which plaintiff, again, denies), the objective reasonability of the arrest would have been a closer call; however, defendant was not entitled to qualified immunity under the facts presented at trial.

## II. Motion for New Trial (#87)

Defendant moves for a new trial pursuant to Federal Rule of Civil Procedure 59 because he states that the verdict was against the weight of the evidence and as such reflects a miscarriage of justice; the verdict resulted from prejudicial evidentiary rulings; and because defendant was unfairly surprised and prejudiced by plaintiff's evidence relating to damages.

### A. Weight of the Evidence

A new trial is warranted when the jury's verdict resulted in a miscarriage of justice. *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). A miscarriage arises where the verdict is

---

[2] Defense counsel suggested that plaintiff's use of hand sanitizer might have been the source of the smell of alcohol that defendant detected. But the defendant was adamant during his testimony that it was not hand sanitizer that he had smelled.

4

against the great, clear, or overwhelming weight of the evidence. *Frumkin v. Mayo Clinic*, 965 F.2d 620, 625 (8th Cir. 1992). This Court "is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir. 1992) (citing *White*, 961 F.2d at 780).

Defendant specifically argues that the jury's verdict was against the great weight of the evidence because he established that he had probable cause to arrest plaintiff. However, as the Court has already addressed above, the jury had ample evidence to support plaintiff's claim. There was conflicting testimony from plaintiff and defendant, and it "was the proper function of the jury to consider the conflicting testimony and to resolve the credibility question." *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 189 (8th Cir. 1987), cited in *Boesing v. Spiess*, 540 F.3d 886, 890 (8th Cir. 2008). This Court, having also heard the live testimony and viewed the video recording of the arrest and the events leading up to it, cannot say that the verdict was against the great weight of the evidence, nor did the verdict represent a miscarriage of justice.

### B. Evidentiary Rulings

Erroneous evidentiary rulings warrant a new trial if the errors were sufficiently prejudicial that a new trial would likely produce a different result. *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 434 F.3d 1081, 1098 (8th Cir. 2006).

### 1. Blood Alcohol Test Results

Next defendant asserts that he is entitled to a new trial because the blood alcohol test results should not have been admitted. Defendant argues the results were irrelevant because they did not go to whether defendant had probable cause to arrest plaintiff at the time of the arrest. Although it is true that the "fact that the person arrested is later found innocent is not material," *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013), the results were admissible to disprove the claim that defendant had smelled alcohol when he first spoke with plaintiff. In other words, because the evidence contradicted defendant's story, it could be used for impeachment. *See, e.g.*, *Kansas v. Ventris*, 556 U.S. 586, 594 (2009). Defendant does not address the matter of impeachment specifically, but he does argue that --- even if relevant --- the test results caused the jury focus on the after-the-fact probable cause analysis. Thus defendant contends the test results were more prejudicial than probative and thus inadmissible under Federal Rule of Evidence 403. This Court disagrees. The evidence at trial would have been improperly incomplete if the fact of the blood alcohol test results had not been included. Defendant complains that it caused the jury to focus from the key question of probable cause at the time of the arrest, but the blood alcohol test results were needed to refute defendant's statement that he smelled alcohol. Defendant had ample opportunity to try to explain his reasoning for arresting. But plaintiff was entitled to present his evidence that defendant's story did not make sense both in light of the video footage and the defendant's other contradictory behaviors, such as

allowing an allegedly drunk person to remove firearms from their holsters and leaving weapons and evidence in an unaccompanied federal law enforcement vehicle on the side of the interstate. Finally, the jury was clearly instructed that the presence or absence of probable cause was to be measured at the time of the arrest and that the "fact that the person arrested is not subsequently convicted is not material to whether probable cause existed at the time of the arrest." (#76, Instruction No. 5.) Defense counsel also made the legal standard clear to the jury during oral argument. The admission of the breathalyzer test results was not error.

## 2. Reputation

Defendant next argues that the Court should have permitted defendant to introduce evidence regarding plaintiff's reputation among members of the law enforcement community before the arrest. Plaintiff submitted that he was being transferred to another location in part because of his poor working relationship with the Missouri State Highway Patrol (defendant's coworkers), and he suggested that his reputation among those officers was sullied due to the arrest. Defendant sought to introduce evidence that his reputation had been tainted by other events that occurred before the arrest --- specifically, the plaintiff's relationship with a potential witness in a murder investigation involving the death of a Missouri Highway Patrol sergeant. Although defendant states that the Court rejected the evidence under Rule 404(b), the Court actually rejected the evidence under Rule 405 because it involved specific incidents of alleged misconduct --- evidence that can

7

only be used to impeach general reputation evidence. The Court also observed that the evidence defendant sought to introduce would have opened the door to evidence the defendant had wanted to avoid --- that is, evidence that would raise the inference that the arrest was pretextual. Thus, contrary to defendant's current argument, the Court did not categorically reject the evidence, but rather stated it could be submitted only to rebut general reputation statements.[3] Further, there was no prejudice to defendant in light of the fact that the evidence would raise an inference of a pretextual stop and as such was likely to do more harm than good to the defense.

### C. Unfair surprise

Next, defendant argues that he was unfairly surprised by plaintiff's assertion that his damages included being transferred as a result of his arrest and its aftermath. Plaintiff did not plead his transfer or transfer-related damages, and defendant states that he did not have adequate time to conduct discovery into those matters. Additionally, when defendant was allowed to depose some individuals in the days before trial, those individuals were not authorized to testify about the transfer due to restrictions imposed by the ATF. As a result, defendant said he was unprepared to rebut the contention that the arrest caused plaintiff's transfer.

The testimony was clear that plaintiff was being required to transfer to another

---

[3] The Court explicitly made clear that the evidence was not categorically rejected. The Court stated, "don't get me wrong about this. If they introduce reputational witnesses to indicate that he has a good reputation, as they've done before already, then you'd be allowed to ask him about specific instances of misconduct….including all this that we've been talking about."

location because the Missouri State Highway Patrol (and other state entities) would not work with him. It is not clear, however, what more information defendant expected or wished to have. That the ATF agents defendant deposed could not testify completely was made obvious to the jury through their live testimony. In addition, in light of the aftermath of the arrest (including letter documentation stating that plaintiff was unable to work with certain state entities), it cannot be a surprise to anyone that an ATF agent who cannot work with local law enforcement cannot continue working as an agent in that area.

### D. Future Damages

Finally, defendant argues that the jury should not have been instructed to award future damages. Instruction No. 6 stated

> If you find in favor of the plaintiff, you must award him an amount of money that will fairly compensate him for any damages you find he sustained and is reasonably certain to sustain in the future as a direct result of the violation of the conduct of the defendant as submitted in Instruction 5.
>
> Remember, throughout your deliberations you must not engage in any speculations, guess, or conjecture and you must not award any damages under this Instruction by way of punishment or through sympathy.

Defendant argues that plaintiff did not plead future damages nor did he put forth any evidence to support the existence of future damages. The Court first observes that there was no objection preserved as to the matter of this instruction. Moreover, there was evidence of future damages: plaintiff testified how the arrest affected him daily or almost daily, and there was also testimony about how his impending transfer and ongoing need to explain his arrest to others would affect his future as well.

9

## IV. Motion for Attorneys' Fees (#83)

Having prevailed in the award of a $250,000 judgment against the defendant, plaintiff moves for an award of attorneys' fees pursuant to 42 U.S.C. § 1988. The lodestar calculation (a reasonable hourly rate multiplied by hours reasonably billed for each task) is the place to begin the Court's analysis. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). Counsel's hourly rate and hours spent on this matter are reasonable. Plaintiff's counsel provided in their motion the facts supporting their lodestar calculation, which supports their request for $92,825. Notably, defendant has not filed a response in opposition to the motion, and the motion will be granted.

## V. Conclusion

Defendant's post-trial motions will be denied. Plaintiff's motion for attorney's fees shall be granted.

Accordingly,

**IT IS HEREBY ORDERED THAT** defendant's motion for judgment as a matter of law the verdict (#85) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for a new trial (#87) is **DENIED**.

**IT IS FINALLY ORDERED** that plaintiff's motion for attorneys' fees (#83) is **GRANTED**, and defendant is ordered to pay $92,825 in attorneys' fees to plaintiff's counsel.

Dated this 12th day of November, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE